UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT A. WILSON,<br><br>Defendant. | Case No. 21-cr-00228-JSW-1<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, THE UNITED STATES' MOTION FOR ORDER DIRECTING PENSIONS TO ACCEPT APPLICATIONS AND BEGIN DISBURSEMENTS**<br><br>Re: Dkt. No. 57 |

Now before the Court is the United States' Motion for an Order Directing Pensions to Accept Applications and Begin Disbursements. Defendant Scott A. Wilson opposes. Garnishee IUOE General Pension Plan ("IUOE") filed a response and proposed order. The Court has considered the parties' papers, IUOE's papers, relevant legal authority, and the record in this case, and it finds the matter suitable for resolution without oral argument. For the following reasons, the Court GRANTS, IN PART, and DENIES, IN PART, the United States' motion.

## BACKGROUND

Defendant pleaded guilty to violating 29 U.S.C. section 501(c) – Embezzlement of Labor Organization Assets. (Dkt. No. 46, Plea Agreement, ¶ 1.) Defendant served as the director of Information Technology for Operating Engineers Local No. 3 ("OE3"). Defendant admitted to using his role to embezzle at least $3,982,475 from OE3 by creating companies which submitted fraudulent invoices for receipt. (Plea Agreement ¶ 2.) Defendant personally obtained at least $2,440,000 from the scheme. (*Id.*)

As part of his plea agreement, Defendant agreed "that [his] pension(s) may be offset or reduced to pay any restitution ordered by the Court, and [he] further agree[d] to assist in any efforts to collect against any pension in which I am a participate to ensure the payment of any

restitution order imposed against me." (*Id.* ¶ 9.)

On November 2, 2021, the Court sentenced Defendant to imprisonment for a term of 60 months to be followed by three years of supervised release. (Dkt. No. 52, Judgment, at 2-3.) The Court ordered Defendant to pay $4,669,577.00 in restitution to OE3. (*Id.* at 6-7.) The Court further ordered:

> During imprisonment, payment of restitution is due at the rate of not less than $25 per quarter and payment shall be through the Bureau of Prisons Inmate Financial Responsibility Program. Once the defendant is on supervised release, restitution must be paid in monthly payments of not less than $250 or at least 10 percent of earnings, whichever is greater, to commence no later than 60 days from placement on supervision. Notwithstanding any payment schedule set by the court, the United States Attorney's Office may pursue collection through all available means in accordance with 18 U.S.C. §§ 3613 and 3664(m). . . . The defendant's pension can be offset to contribute to restitution payments.

(*Id.* at 7.)

Defendant remains in home detention and is scheduled for release on April 4, 2025. (Dkt. No. 77, Opposition, at 2:2-3.) As of August 15, 2024, Defendant had paid $2,948.96 toward his judgment debt and owed $4,687,176.70, plus interest. (Dkt. No. 57-1, Declaration of Diana Huang ("Huang Decl."), ¶ 6.)

Defendant has a vested interest in two defined benefit pension plans, one though OE3 ("OE3 Pension") and one through the International Union of Operating Engineers General Pension Plan 1 ("IUOE Pension"). Defendant is eligible to receive pension payments from the plans but has declined to do so.

The United States now moves for an order permitting it to step into Defendant's shoes, apply to receive the pension payments, garnish twenty-five percent of the payments, and direct the remainder to be disbursed to the Clerk of Court in satisfaction of Defendant's outstanding restitution liability.

After considering the papers, the Court ordered additional briefing on the question of whether the Court has the authority to order the non-garnished portion of the pension payments to be delivered to the Clerk of Court and, if not, how the Court could calculate 25 percent of earnings in the absence of financial disclosures from Defendant.

2

**ANALYSIS**

A.  **Applicable Legal Standards.**

The Mandatory Victims Restitution Act, 18 U.S.C. section 3663A *et seq.* (the "MVRA"), permits the United States to "enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." 18 U.S.C. § 3613(a). The statute provides that "all provisions of this section are available to the United States for the enforcement of an order of restitution." *Id.* § 3613(f). 18 U.S.C. section 3664(m) authorizes the United States to enforce an order of restitution "by all other available and reasonable means." 18 U.S.C. § 3664(m)(A)(ii).

In *United States v. Novak*, the Ninth Circuit reconciled the MVRA with the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. section 1001 *et seq.*, by determining that "criminal restitution orders can be enforced by garnishing retirement funds, but with the funds only payable when the defendant has a current, unilateral right to receive payments under the terms of the retirement plan." 476 F.3d 1041, 1043 (9th Cir. 2007). The court noted that the MVRA permits the government to reach all property rights "[n]otwithstanding any other Federal law," meaning that it supersedes other statutes "except as specified in MVRA itself." *Id.* at 1046-47.

The MVRA itself notes that the Consumer Credit Protection Act, 15 U.S.C. section 1673 ("CCPA"), applies to enforcement of judgments. 18 U.S.C. § 3613(a)(3). The CCPA limits garnishment to 25 percent of weekly disposable earnings. *See United States v. Wells*, 55 F.4th 784, 800 (9th Cir. 2022) (discussing MVRA and CCRA). So, too, does the MVRA. *Id.* The Court may not side-step this limit through the All Writs Act, 28 U.S.C. section 1651(a), or otherwise. *See id.* (reversing order requiring defendant to pay 80 percent of retirement benefits toward restitution and requiring district court to make finding regarding whether the benefits were "earnings" under the CCPA).

B.  **Defendant Has a Present Right to Payments Under the Pension Plans.**

Both the OE3 Pension and IUOE Pension permit vested employees to begin disbursements at age 55. (Huang Decl., Ex. B, OE3 Pension Plan, at 20; *id.*, Ex. C, IUOE General Pension Plan I

3

1   Summary Plan Description, at 15.)  Defendant is 57 years old, and thus eligible for distributions.

2   　　　　Both plans include spousal benefits, which are held by Defendant's spouse Miriam Wilson;
3   however, Defendant does not need spousal approval to begin distributions.  (Huang Decl., Ex. B,
4   at 41; *id.*, Ex. C, at 20.)  Miriam Wilson's rights are not affected by a distribution order.

5   　　　　Defendant objects to an order to begin pension distributions before reaching age 65.
6   Defendant's personal preference, however, is irrelevant given that Defendant has the ability to
7   obtain payments.  *See Novak*, 476 F.3d at 1063 (noting the Government "steps into the defendant's
8   shoes" and assumes the same rights to the pension funds as the defendant currently possesses); *cf.*
9   *United States v. Shkreli*, 47 F.4th 65, 73 (2d Cir. 2022) (holding, "[t]hat Greebel has not 'elected'
10  to withdraw his retirement funds upon termination does not mean that he does not have the right to
11  do so.").

12  　　　　The Court finds that Defendant has a present right to periodic payments.  Accordingly, the
13  United States has the right to apply for immediate distribution of those payments.

14  **C.    The Pension Payments Are "Earnings."**

15  　　　　Under the CCPA, "'earnings' means compensation paid or payable for personal services,
16  whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic
17  payments pursuant to a pension or retirement program."  15 U.S.C. § 1672(a).

18  　　　　Here, both the OE3 Pension and IUOE Pension are defined benefit plans which make
19  "periodic payments" to their beneficiaries.  They are therefore "earnings" under the CCPA and
20  protected from garnishment in full under the MVPA.  *See Shkreli*, 47 F.4th at 76-77 (explaining
21  lump-sum distributions of retirement funds are not subject to CCPA cap, but periodic payments
22  are).

23

24  **D.    The United States May Garnish 25 Percent of the Pension Payments, but May Not Direct Disbursal of the Non-Garnished Payments to the Clerk of Court.**

25  　　　　Pursuant to *Novak*, the United States has the right to garnish Defendant's pension
26  payments.  476 F.3d at 1043 ("criminal restitution orders can be enforced by garnishing retirement
27  funds").  Garnishment is limited to 25 percent of earnings.  *Wells*, 55 F.4th at 800.

28  　　　　The United States argues, consistent with the maxim that it "steps into Defendant's shoes,"

United States District Court
Northern District of California

that it has the right to request disbursal of the balance of the periodic pension payments to the Clerk of Court for the purpose of paying down Defendant's restitution obligation. In support, the United States cites *Usery v. First National Bank of Arizona*, 586 F.2d 107 (1978). The United States also cites the Court's restitution order, which expressly states that the Defendant's pension may be offset to contribute to restitution payments. Finally, the United States argues that Defendant is bound by his plea agreement in which Defendant "agree[d] that [his] pension(s) may be offset or reduced to pay any restitution ordered by the Court." (Dkt. No. 46, Plea, at 7:5-6.)

The *Usery* court determined that the CCPA does not protect wages already paid to and received by an employee. *Usery*, 586 F.3d at 111. While a creditor could garnish only up to 25 percent of earnings as they are paid, the creditor could reach the income by garnishing the debtor's bank account. *Id.* at 110 (noting that money held in bank accounts are not "earnings. . . even if such funds can be traced to compensation in the form of wages.") (quoting *Kokoszka v. Belford*, 417 U.S. 642, 651 (1974)). In so finding, the Court held that the recipient bank, unlike the payor, did not have a duty to calculate an exemption for a debtor under the CCPA. *Id.*

The Government argues that applying *Usery* to mean it could direct the non-garnished portions of the pension payments would benefit the victims and the Defendant. It avers that, if the pension payments may be directed to Defendant's bank account, "the government would promptly seek a writ of continuing garnishment against that account, potentially accessing Defendant's deposits from other sources," and it "would seek to impose another ten-percent surcharge for the additional garnishment, pursuant to 28 U.S.C. § 3011(a)." (Dkt. No. 86, United States' Additional Briefing Re Pension Disbursements, at 3:17-21.) This garnishment would place Defendant in a worse position than if he, or the United States in his place, had directed the balance of his pension payments to be distributed to the Clerk of Court.

Despite finding the United States' efficiency arguments compelling, the Court holds that it lacks authority to direct the non-garnished portions of the pension payments to the Clerk of Court. If creditors, including the Government, could avoid the constraints of the garnishment cap by directing the payments to be made toward restitution, then the provision including pension payments in the definition of "earnings" under the CCPA and MVPA would be superfluous. *See*

5

*Novak*, 476 F.3d at 1048 ("We avoid whenever possible statutory interpretations that result in superfluous language.") Such an order would be the functional equivalent of permitting 100 percent of the earnings to be garnished—an outcome that is expressly prohibited by the CCPA. It makes no difference that a separate mechanism exists for levying monies held in accounts; it is the period payment of earnings that is protected by the statute.

The Court further finds that the terms of the plea agreement do not require the full balance of the periodic pension payments to be distributed directly to the Clerk of Court. Defendant agreed that his pensions "may be offset or reduced" to pay restitution, but he did not agree to forfeit the MVPA's statutory protections as to the amount of offset or reduction. (*See* Plea Agreement, ¶ 9.) Absent a clear expression to waive the MVPA's limitations on garnishment, the Court will not find waiver.

## CONCLUSION

For the foregoing reasons, the United States' motion is GRANTED, IN PART, and DENIED, IN PART. The Court HEREBY ORDERS as follows:

1. The United States may garnish up to 25 percent of the pension plan benefit payments to which Defendant Scott Wilson is entitled from OE3 Trust Funds and IUOE General Pension Plan I.

2. The United States shall submit renewed applications for pension benefits to Garnishees OE3 Trust Funds and IUOE General Pension Plan I. The applications shall provide for benefit payments to be made directly to Defendant Scott Wilson in the form of a 50% Joint and Survivor Annuity.

3. OE3 Trust Funds and IUOE General Pension Plan I shall calculate any benefit to be paid to the United States and to Defendant Scott Wilson.

4. OE3 Trust Funds and IUOE General Pension Plan I shall accept the applications and shall begin making monthly benefit payments as provided in this Order within ninety (90) days after this Order is entered, except that they may commence payments after such period if a temporary delay is needed due to reasonable administrative needs.

5. OE3 Trust Funds and IUOE General Pension Plan I shall accept the Form W-4P

Withholding Certificates to be submitted by the United States on behalf of Defendant Scott Wilson and shall report benefit payments made to the United States on behalf of Defendant Scott Wilson to the Internal Revenue Service as income for Defendant Scott Wilson, withhold federal income tax for "Single or Married filing separately," with no additional income from jobs or other pensions, with no dependents or other credits, and no other adjustments.

6. Nothing in this Order shall be construed to prevent OE3 Trust Funds or IUOE General Pension Plan I from adjusting benefit payments in the future as necessary and as provided in the pension plans or as required by changes in the law after this Order is entered.

7. In the event the United States receives notice of Defendant Scott Wilson's death, the United States shall notify OE3 Trust Funds and IUOE to discontinue restitution payments on Defendant Scott Wilson behalf to the United States.

8. Any benefits payable by the OE3 Trust Funds or IUOE upon Scott Wilson's death shall be paid to Defendant Scott Wilson's spouse, designated beneficiary, or as may be provided in the pension plans or otherwise as mandated by law.

**IT IS SO ORDERED.**

Dated: February 18, 2025

_____
JEFFREY S. WHITE
United States District Judge